# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RONELL RICHARD, as Special Administrator of the Estate of EDGAR RICHARD, DECEASED,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| v. ) ) | Case No. 09-1278-WEB |
| **SEDGWICK COUNTY BOARD OF COMMISSIONERS, et al.,** ) ) ) | **(consolidated with 10-1042-WEB)** |
| **Defendants.** ) ) ) | |

## MEMORANDUM AND ORDER

The Sedgwick County Board of Commissioners, Sedgwick County Sheriff Robert Hinshaw, former Sheriff Gary Steed, and Sedgwick County Detention Deputy Saquisha Nelson (hereinafter "movants") seek an order requiring defendant Manual Diaz (Diaz) to return or destroy certain documents. (Doc. 153). Specifically, movants argue that Diaz inadvertently obtained a copy of certain documents protected by the "executive/deliberative" privilege and the documents should be returned or destroyed.[1] Diaz contends that the documents support his defenses but will return the documents if ordered to do so. Plaintiff opposes the motion, arguing that the documents are not privileged and, alternatively, any

---

[1] Not all defendants have joined in this motion; therefore, the four defendants seeking return of the documents will be referred to as "movants" for editorial clarity.

privilege has been waived. For the reasons set forth below, the motion shall be DENIED.

**Background**

This is a civil rights case claiming excessive use of force and failure to provide medical care to a person confined in the Sedgwick County Jail. Highly summarized, plaintiff alleges that Edgar Richards, an inmate with a history of mental illness, was severely beaten by Deputy Diaz while incarcerated on February 15, 2008. Because the parties are well versed in the nature of this case and the details giving rise to this motion, the court limits its discussion to the events pertinent to the motion for the return of documents.

The Sedgwick County Sheriff's Department Professional Standard Unit ("PSU") investigated the February 15 incident and prepared (1) a March 14, 2008 draft report, (2) an April 14, 2008 report, and (3) an "additional" April 17, 2009 report. The March 14 draft and April 14 report contain witness summaries, analysis, and conclusions concerning Deputy Diaz's compliance with policies and procedures. Although the March 14 and April 14 reports contain some identical interview information, the contents of the two reports also have material differences. The April 17, 2009 "report" is an updated analysis of the incident following a plea of "no contest" by Diaz to the charge of reckless aggravated battery.

Plaintiff requested the production of documents related to any internal investigations and movants' counsel produced redacted parts of the April 14, 2008 report. The deleted portion of the April 14, 2008 report and the entire April 17, 2009 report were withheld based on a claim of "executive/deliberative privilege." For reasons unexplained, the March 14 draft

report was neither produced nor was it ever listed on defendants' privilege log.

Plaintiff also served production requests on Diaz for any documents exchanged between Diaz and various law enforcement entities concerning the underlying incident. Diaz's attorney identified the PSU draft report of March 14, 2008, the PSU report of April 14, 2008, and the PSU "additional report" of April 17, 2009, ***with no redactions.*** The response also stated that the reports "contain findings and conclusions that exculpate defendant Diaz and would be helpful in his defense, especially with regard to plaintiff's prayer for exemplary damages." The circumstances of Diaz's possession of the complete reports are described in greater detail in the following analysis of the parties' waiver arguments.

As noted above, movants contend that the analysis and conclusions in the reports are protected by the "executive/deliberative" privilege and that they should be returned because they were inadvertently produced. Plaintiff counters that movants: (1) failed to carry their burden of showing that the withheld materials are privileged and (2) waived any privilege by disclosing PSU's analysis and conclusions. As explained below, disclosure of the information is fatal to movants' motion.[2]

Plaintiff contends that there are at least three instances of disclosure. First, plaintiff asserts that the attorney representing Diaz in the criminal proceeding learned "that the

---

[2] The executive/deliberative privilege is not absolute and an extended discussion of the nuances of the privilege is not necessary given the rulings concerning disclosure. For purposes of this ruling the court assumes, without deciding, that the documents would otherwise qualify for the executive/deliberative privilege.

Sedgwick County Sheriff Department's professional standards unit had decided that Mr. Diaz had not violated General Order 1.3 section 1.3.1 Use of Force in its investigation of the February 15, 2008 incident." (Doc. 167, p. 6). More recently, Diaz testified during his deposition that he was told the results of PSU's investigation and that PSU and the FBI had cleared him. Movants do not address these allegations of disclosure.

Movants do address in detail the disclosure in June 2011 when James Lawing, counsel for Diaz, asked to see the original PSU file concerning his client.[3] The request was made to an in-house county counselor who served as the county's liaison with Mr. Lawing. Mr. Lawing was granted unrestricted access to PSU's complete reports concerning the investigation and the PSU office provided copies of the documents which Mr. Lawing requested.

Movants concede that Mr. Lawing inspected the PSU files at PSU's offices and that neither movants' counsel nor the in-house county counselor were present during the inspection. However, movants contend that Mr. Lawing was provided copies of the privileged information because "[Lawing] apparently did not review or did not remember that the Sheriff had claimed privilege to PSU's investigative reports." (Doc. 154, p. 4). The inference that Mr. Lawing was somehow at fault is not persuasive and summarily rejected.

At best, movants' explanation of how and why Mr. Lawing was granted unrestricted access to the PSU reports implicates misunderstandings and communication gaps between

---

[3] Sedgwick County apparently agreed to pay for Mr. Lawing to represent Diaz pursuant to K.S.A. 75-6116(a)(1).

-4-

outside counsel and in-house counsel.[4]  However, misunderstandings concerning the roles and responsibilities of movants' counsel and the county counselor's office do not rescue the unrestricted disclosure of the reports to a third party and restore their privileged status.

Movants argue that the "inadvertent" disclosure of documents should not be considered a waiver of their privilege based on the five-factor test set forth in <u>Monarch Cement Company v. Lone Star Industries</u>, 132 F.R.D. 558, 560 (D. Kan. 1990).  The factors are:

> 1. The reasonableness of the precautions taken to prevent inadvertent disclosure;
>
> 2. The time taken to rectify the error;
>
> 3. The scope of discovery;
>
> 4. The extent of disclosure; and
>
> 5. The overriding issue of fairness.

These factors are discussed in the analysis which follows.

**Reasonableness of precautions**

Movants argue that this factor weighs in their favor because ***outside counsel*** made copies of the reports, Bates-Stamped the copies, and claimed the privilege in response to plaintiff's formal production requests.  Movants argue it was not reasonably foreseeable,

---

[4] Both movants' outside counsel and the county's in-house counsel assert that the inspection would have been handled differently if requested by any attorney other than Mr. Lawing.  However, there is no clear explanation why Mr. Lawing would have been granted unrestricted access to movants' privileged documents.  For example, movants do not assert the existence of a "joint defense" agreement that would support the sharing of privileged documents with Diaz.

*from the perspective of movants' outside counsel*, that Mr. Lawing would informally seek the documents through the county counselor's office. (Doc. 154, p. 13). The problem is that this argument only addresses the efforts that outside counsel made to protect the copies *in outside counsel's possession.*[5] There is no evidence that the Sheriff's department, the PSU office, or county counselor's office took any precautions to prevent the disclosure of the reports' analysis and conclusions from Mr. Lawing.[6] This lack of precaution is further illustrated by (1) the earlier disclosure of the results of the investigation to Diaz and his criminal defense attorney and (2) the failure to list the March 14 draft report on the privilege log. Under the circumstances, the court is not persuaded that movants exercised reasonable precautions in preventing the disclosure of the reports.

---

[5] Many of movants' arguments are from the perspective of outside counsel in the context of this case. The mere fact that outside counsel represents a party in the case obviously does not determine whether a document is protected by a privilege.

[6] For example, the documents submitted for an in camera review do not show any indication, such as a "confidential" or "privileged" stamp, that disclosure of the information is somehow restricted.

**Time taken to rectify error**

Movants promptly took efforts to secure the return of the documents after Mr. Lawing advised that he had the documents and, with respect to the documents, this factor weighs in movants' favor. However, there is no indication that similar efforts were made concerning the earlier disclosure of the investigation results to Diaz and his criminal attorney.

**Scope of discovery**

The PSU file that Mr. Lawing reviewed in June 2011 contained apparently 250 pages of documents. This is not a large volume of documents and the "scope of discovery" on this particular occasion favors waiver.

**Extent of disclosure**

The extent of the June document disclosure is limited to Mr. Lawing. However, the results were earlier conveyed to both Mr. Diaz and his criminal defense lawyer. The court would weigh this factor against waiver if not for the earlier disclosures.

**Overriding issue of fairness**

The key to consideration of this factor is the relevance of the documents. Wallace v. Beech Aircraft, 179 F.R.D. 313, 315 (D. Kan. 1998). The documents are relevant in the context of discovery because they directly discuss the circumstances of the incident and

whether Diaz violated policies and procedures and used excessive force.[7] Equally important, Diaz, his criminal defense attorney, and now his civil attorney know the results of the investigation. The overriding issue of fairness weighs heavily in favor of waiver.

After considering all of the factors and circumstances, the court concludes that the disclosure of the information contained in the "analysis and conclusion" sections of the reports constituted a waiver of the executive/deliberative privilege. Accordingly, movants' motion for the return of documents is denied.

**IT IS THEREFORE ORDERED** that movants' motion for the return of documents **(Doc. 153)** is **DENIED.**[8]

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 26th day of October 2011.

S/ Karen M. Humphreys

———————————————

KAREN M. HUMPHREYS
United States Magistrate Judge

---

[7] Movants focus on whether the report is admissible at trial, an argument that raises issues different from the factors considered in determining whether a document is "relevant" in the context of discovery.

[8] Because Diaz is obligated to produce any documents he received from law enforcement agencies concerning this incident, plaintiff will gain access to the complete reports. However, **the documents shall not be produced to plaintiff until after the deadline for any review of this ruling by the district judge.**

-8-