IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONELL RICHARD, as Special          )
Administrator of the Estate of      )
EDGAR RICHARD, DECEASED,            )
                                    )
                 Plaintiff,         )
                                    )
v.                                  )          Case No. 09-1278-WEB
                                    )
 SEDGWICK COUNTY BOARD OF           )          (consolidated with 10-1042-WEB)
COMMISSIONERS, et al.,              )
                                    )
                 Defendants.        )
_____)


## MEMORANDUM AND ORDER


This matter is before the court on the motions of defendant doctors McNeil and

Murphy (the "doctors") for a protective order concerning their depositions.  (Doc. 190 &

195).[1]  Because the requested relief and arguments are virtually identical, the motions will

be addressed together.  For the reasons set forth below, the motions shall be **GRANTED IN**

**PART.**

---

[1]

        The doctors also request a protective order concerning the depositions of
"nonparty treating healthcare providers."  These "other" witnesses are neither named nor
discussed in the parties' briefs; therefore, this ruling addresses only the doctors'
depositions.

## Background

This is a civil rights case claiming excessive use of force and substandard medical care to a person confined in the Sedgwick County Jail. Plaintiff alleges that on February 15, 2008, Edgar Richards, an inmate with a history of serious mental illness, was severely beaten by Deputy Diaz. Because the parties are familiar with the nature of this case and the details giving rise to the motions for protective orders, the court limits its discussion to the issues pertinent to the court's rulings.

## Healthcare Provider Depositions and Requested Protective Order

The doctors seek a protective order under Fed. R. Civ. P. 26(b)(2)(C) and 26(c) prohibiting plaintiff from asking them deposition questions concerning: (1) the applicable standard of care for "other" healthcare providers, (2) whether another healthcare provider breached the standard of care, and (3) opinions about the care and treatment provided by another healthcare provider. The doctors argue that depositions in this case have been "rocky" because of the nature of plaintiff's questions in earlier depositions and that a protective order will "avoid unnecessary contentiousness in the upcoming depositions of party and treating healthcare providers." Specifically, they contend that plaintiff's counsel has a history in this case of improperly asking treating healthcare fact witnesses to express expert opinions. Plaintiff counters that the motions are an improper attempt to limit the questioning of fact witnesses. As explained in greater detail below, plaintiff's arguments concerning fact witness observations are misguided.

As noted above, the doctors argue that a protective order is warranted because plaintiff's counsel has a practice of asking healthcare fact witnesses to express expert opinions about matters about which they are not qualified to testify. For example, the doctors cite deposition questions asking defendant William Novak, an Advanced Registered Nurse Practioner (ARNP), to express opinions concerning mental healthcare records and evaluations prepared by Dr. McNeil, a medical doctor. Plaintiff pursued this line of questioning over defendants' objections even though Novak testified that he was not an expert in mental healthcare. Similarly, plaintiff asked Cassie Leu, a Certified Medication Aid, questions concerning the appropriate level of care for mentally ill inmates. Leu's job was to deliver medication to inmates and this line of questioning was pursued after Leu testified that she had no "mental health training and education."

Plaintiff counters that the quoted portions of Novak and Leu's deposition testimony are taken out of context and that Novak and Leu are qualified to express opinions based on "experience" and "common knowledge." Plaintiff also argues that deposition testimony of Novak and Leu reflects the factual observations and "incidental opinions" of healthcare providers. See Raney-Neises v. HCA, 2001 WL 362396889 (Dist. Ct. of Sedgwick County, Kan., May 25, 2001)(Judge Yost).

An analysis of Novack and Leu's deposition questions and answers is not a productive exercise in the context of the discovery dispute before the court. The questions have been asked, objections have been asserted, and answers have been given. Whether their testimony is admissible is an evidentiary question for the trial judge that can be addressed through a

motion in limine.  The court is also not persuaded that a detailed analysis of the nuances discussed by Judge Yost in Raney-Neises is warranted.  Judge Yost's opinion was issued in 2001 based on state laws concerning discovery and evidence.  Discovery in this case is governed by the federal rules of civil procedure and, more importantly, the issues are framed differently.

Contrary to plaintiff's arguments, the doctors do ***not*** seek to limit questions concerning their observations, actions, and incidental opinions in their role as treating healthcare providers.  Instead, the doctors argue that they should not be required to answer questions concerning the standard of care of ***other*** health care providers based on hypothetical questions or factual events that were beyond their observations or care and treatment responsibilities.  The court agrees.  Plaintiff has not retained either Dr. Murphy or Dr. McNeil as an expert witness for purposes of expert consultation or testimony under Fed. R. Civ. P. 26.  Moreover, a request for expert opinions from a treating physician that goes beyond the care and treatment provided to the patient is improper.  Garcia v. Polich, Case No. 00-1231-MLB, D. Kan., Jan. 24, 2002, Doc. 190.

**Summary**

Because plaintiff has misconstrued the scope of the doctors' requested relief, the parameters of the protective order are summarized as follows.  Plaintiff may question the doctors concerning:  (1) their factual observations, (2) their respective experiences as physicians treating inmates, and (3) the physical condition of inmates under their care.

Because the doctors also served as supervisors for some mid-level care providers (e.g., physician assistants), plaintiff may question the doctors concerning any factual information or opinions which were formed in their medical role as supervisors of subordinate healthcare providers.  Plaintiff may also question the doctors concerning incidental opinions they formed *during* their care and treatment of Edgar Richards.  With the exception of persons the doctors supervised, plaintiff shall not ask the doctors to (1) evaluate the quality of care and treatment provided by another healthcare provider, (2) express an opinion on the standard of care applicable to another healthcare provider, and (3) provide an opinion on whether another healthcare provider met or breached the applicable standard of care.

**IT IS THEREFORE ORDERED** that the doctors' motions for a protective order (**Doc. 190 & 195**) are **GRANTED IN PART**, consistent with the rulings herein.  Dr. Murphy's request that the deposition be conducted in the court's presence is **DENIED.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 8th day of November 2011.

S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge