IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

RONELL RICHARD, as Special      )
Administrator of the Estate of  )
EDGAR RICHARD, Deceased,        )
                                )        **CIVIL ACTION**
                                )
Plaintiff,                      )        No. 09-1278-MLB-KMH
                                )        (Lead case; consolidated
v.                              )        with No. 10-1042-MLB-
                                )        KMH)
BOARD OF COUNTY COMMISSIONERS OF)
SEDGWICK COUNTY, et al.,        )
                                )
Defendants.                     )
_____ )

**MEMORANDUM AND ORDER**

Before the court are the following:

**1. Motion for partial summary judgment by Sedgwick County
defendants other than Manuel J. Diaz[1] (Doc. 290, 291);
2. Plaintiff's response (Doc. 317, 320); and
3. Defendants' reply (Doc. 326).**

This suit was filed after Edgar Richard was seriously injured

by detention deputy Manuel Diaz at the Sedgwick County jail. The

defendants include Sedgwick County, several of its officers, and

county-contracted medical personnel who treated Richard.

The Sedgwick County defendants now move for summary judgment

on several state law tort claims. They contend plaintiff failed to

---

[1] The movants are: Board of County Commissioners of Sedgwick
County; County of Sedgwick; Sedgwick County Sheriff's Department;
Sedgwick County Sheriff Robert Hinshaw; Sedgwick County Sheriff
Gary Steed; and Detention Deputy Saquisha Nelson. (Doc. 290).

provide proper notice of the claims under K.S.A. 12-105b(d). For the reasons that follow, the motion will be granted.

**Background**.

Edgar Richard was being held at the Sedgwick County jail on February 15, 2008. He was 59 years old at the time and suffered from severe mental illness and other conditions, including colon-rectal cancer. Richard had a history of erratic behavior. He was in an isolation cell when deputy Diaz and other jail personnel came by to give him medication.

Richard became upset at receiving what he believed to be the wrong medication. He began swearing and moved toward the open cell door. Diaz confronted him. During the altercation that followed, Diaz repeatedly hit Richard in the face and head, causing severe injuries including multiple skull fractures and a broken jaw. Diaz allegedly continued to hit Richard in the face even as Richard lay bleeding and unconscious on the floor.

As a result of the incident Richard spent several weeks in a hospital intensive care unit and underwent multiple surgeries. Later he was detained in a long-term care facility. He died on February 1, 2010. Deputy Diaz was terminated from his job as a result of the incident and pled guilty to a criminal charge of aggravated battery.

Plaintiff now asserts state law tort claims pursuant to the Kansas Tort Claims Act (KTCA) and federal law claims pursuant to

2

42 U.S.C. §1983 for deprivation of civil rights.[2] The federal law claims are not at issue in this motion. The state tort claims include allegations that Sedgwick County and the defendant sheriffs negligently hired and retained Diaz and failed to properly supervise him. They also include claims that all of the defendants engaged in or committed gross negligence and willful or wanton conduct, the tort of outrage, and negligent infliction of emotional distress.

The Sedgwick County defendants contend these state tort claims are barred because plaintiff failed to comply with the KTCA "notice of claim" provision, K.S.A. §12-105b(d), which requires a person with a potential tort claim against a municipality (including a county) in Kansas to give proper written notice to the municipality before filing suit. The provision also applies to potential tort claims against a municipal employee acting within the scope of employment. See King v. Pimentel, 20 Kan.App.2d 579, 890 P.2d 1217 (1995).

A notice letter on plaintiff's behalf was submitted to the county on February 12, 2009. Defendants argue the notice only cited Diaz's conduct and said the sheriff was vicariously responsible for

---

[2] Plaintiff first filed Case No. 09-1278 and later Case No. 10-1042. The two actions are based on somewhat different complaints. Several months after the second action was filed, the court ordered consolidation of the cases for all purposes. (See Doc. 56, Case 10-1042). The two separate complaints remain, however, so this order encompasses the claims from both complaints.

it. They concede the notice was sufficient with respect to a claim for respondeat superior (vicarious) liability against Sheriffs Hinshaw and Steed and the Sedgwick County Sheriff's Department arising from the conduct of Diaz. (Doc. 291 at 3). But they contend it failed to provide notice of potential tort claims for wrongdoing by the county, the sheriffs, or Detention Deputy Saquisha Nelson.

Plaintiff argues the notice met the "substantial compliance" required by §12-105b. Plaintiff contends the notice adequately described the identity of the parties involved, the nature of the incident, the injury suffered, and the fact that a substantial claim for damages would be advanced. It satisfied the purposes of the statute, plaintiff argues, and did not prevent defendants from conducting an investigation. Plaintiff points out that the county and others conducted an extensive investigation beginning shortly after the incident. Moreover, plaintiff says, Kansas law does not require the notice to state any particular theories of recovery.

**Uncontroverted Facts**.

The court finds the following finds to be uncontroverted for purposes of the motion for summary judgment.

Attorneys representing Edgar Richard sent a letter to the Sedgwick County Commission and Clerk on February 12, 2009. The letter stated it was official notice under K.S.A. 12-105b of the claim of Edgar Richard "against Sheriff Hinshaw for the conduct of one of his deputies, who when acting in his official capacity as a

4

Sheriff's deputy applied excessive and indiscriminate force against Mr. Richard, and/or committed battery." (Doc. 291-1, No. 09-1278).

The letter specifically addressed each of the five categories required by 12-105b and included information on each category. The factual basis portion stated that Manuel Diaz was employed as a correctional officer by (then) sheriff Gary Steed on February 15, 2008, the date of the incident. It said two deputies (including Diaz) and a nurse were delivering medication to Richard when a disagreement broke out. It vividly described Diaz's beating of Richard and the injuries suffered. It noted that Richard suffered from severe mental illness and other infirmities and was awaiting a competency hearing at the time of the incident. It said although the sheriff or deputy Diaz might claim there was legal authority to restrain Richard, "the exercise of force was unreasonable and excessive, constituting battery and/or negligent use of force." It said no KTCA immunity would apply, citing cases finding that KTCA immunity for discretionary acts and police conduct is unavailable when the officer breaches a specific duty owed to an individual rather than the public at large. It said "[t]he claim against the Sheriff is made in his official capacity, as the conduct of any employee is by statute the conduct of the Sheriff," citing K.S.A. §19-805 and its language: "The sheriff and sureties of the sheriff shall be responsible, on the official bond of the sheriff, for the default or misconduct of the undersheriff and deputies."

The factual basis said nothing about negligently hiring or retaining Diaz or about a failure to properly train or supervise him. It did not allude to any wrongful acts or omissions by anyone other than Diaz.

The section of the notice listing the name of any public officer or employee involved stated:

> Sedgwick County Sheriff Robert Hinshaw; Deputy Manual [sic] Diaz, and all on-duty jailers, Sedgwick County Sheriff's Office, 525 N. Main, Wichita, KS 67203.
> For purposes of full disclosure, Claimant notes that at the time of the incident Sedgwick County Sheriff was Gary Steed; Sedgwick County Clerk was Don Brace; and Sedgwick County Commissioner was David M. Unruh.

The nature and extent of the injuries suffered was listed in the notice as: "Multiple skull fractures, broken jaw, broken teeth, brain damage." The letter requested monetary damages of $1.75 million.

An assistant county counselor responded to the notice and denied the claim on behalf of the county in a letter dated June 8, 2009. (Doc. 320-3). Among other things, the counselor stated his understanding that Mr. Richard was making a state tort claim for either battery or negligence in an amount of $1,750,000. The letter stated in part that pursuant to K.S.A. 75-6105(a), there was ordinarily a statutory damage limit for KTCA claims against municipalities of $500,000 per occurrence, requiring rejection of the claim.

6

The Sheriff's Department began an investigation shortly after the incident. The FBI and the KBI also investigated. Investigators obtained various witness statements over the following days and weeks, including from defendant Detention Deputy Saquisha Nelson, who was with Diaz at the time of the incident. Several statements indicated that Nelson told Diaz at some point to stop hitting Richard after she realized Richard was unconscious, but Diaz continued to strike Richard in the face two or three times after that.[3] Nelson said she was "shocked" and "froze up" as Diaz was hitting Richard.

A report by the Sheriff's Professional Standards Unit in March of 2008 faulted Diaz for choosing to strike Richard in the head rather than some other area as Diaz attempted to gain control of Richard. It also included criticism of deputy Nelson for being hesitant, opining that a more aggressive response on her part might have lowered Diaz's estimate of the amount of force needed to get Richard under control.

The same report also stated:

> "The early warning system in place to notify supervisors of deputies that have been involved in a high number of Use of Force situations worked to detect a problem with Deputy Diaz's tactics however he never received the counseling and defensive training recommended by those supervisors therefore no corrective action was taken.

---

[3] Some of the witness statements indicated that Richard started the altercation by pushing Diaz or by grabbing at Diaz's neck. For purposes of the instant motion it is immaterial how the altercation got started.

Investigators obtained statements from detention deputies after the incident indicating that some thought Diaz had a reputation for being a "heavy hitter" or a "bash brother," meaning he liked to engage in fighting with inmates. One deputy said he had previously seen an inmate grab Diaz's badge in an assault attempt and Diaz reacted by punching the inmate twice in the face. Statements from some inmates indicated Diaz was known to "have an attitude" or be a "power tripper" who should not be messed with.

The incident with Richard received publicity in the media. Stories relating to this and other claims of excessive force at the jail appeared in the local newspaper and on television. The Sheriff's Department prepared a "talking points" memorandum for responses to media inquiries. The memo defended the department's handling of excessive force claims.

The investigation showed a Sedgwick County district judge had entered an order on December 6, 2007, for Richard to undergo a competency evaluation, but the order was apparently overlooked. Records showed Richard's behavior prior to the incident was erratic. He frequently yelled and banged on his cell door. He would tear up toilet paper, dance around the cell, cuss or throw things at others, and talk incoherently. He did not always take his medication. Statements to investigators indicated that other inmates sometimes taunted Richard.

**Discussion**.

Section 12-105b(d) provides:

Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim. The contents of such notice shall not be admissible in any subsequent action arising out of the claim. Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, a claimant shall have no less than 90 days from the date the claim is denied or deemed denied in which to commence an action.

The Kansas Supreme Court most recently addressed the statute

in Dodge City Implement, Inc. v. Board of County Comm'rs. of Barber

County, 288 Kan. 619, 205 P.3d 1265 (2009). It noted the filing of

a proper notice is a prerequisite to filing an action in court. If

the notice requirement is not met "the court cannot obtain jurisdiction over the municipality." 288 Kan. at 639. The statute only requires substantial compliance, however, which means "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." The statutory objectives are to advise the municipality of the time and place of the injury and to give the municipality an opportunity to ascertain the character and extent of the injury sustained. Dodge City Implement, 288 Kan. at 639.

The notice in Dodge City Implement did not substantially comply with the statute. It identified an incorrect claimant, failed to identify the correct claimants, and did not list the name or address of the claimants' attorney. It also failed to put the county on notice of the correct amount of damages sought. The court said these failures were more than merely technical. They "posed serious obstacles to the County's … full investigation and understanding of the merits of the claims advanced." Without such an investigation and understanding, the legislature's desire to facilitate early and easy resolution of claims against municipalities was undermined. Dodge City Implement, 288 Kan. at 642.

Valid notice must contain a concise statement of the factual basis of the claim, setting forth the circumstances of the act, omission or event complained of. K.S.A. 12-105b(d) (element two).

10

Plaintiff's notice complained of the use of excessive force by deputy Diaz against Edgar Richard, and said the sheriff in his official capacity was responsible for it. But it contained no factual statements remotely suggesting plaintiff was complaining of any wrongful or tortious conduct by the sheriff himself, by the county, or by any officer other than Diaz.

The limited scope of the notice is in sharp contrast to the claims now asserted. Plaintiff's complaint alleges the defendants' "liability arises from its denials and deliberate indifference to the mental and physical health and safety of Plaintiff's Decedent and also from the negligent acts and failures to act and deliberate indifference of its agents/employees, Sheriffs, Detention Deputies, and including, but not limited to, Defendants COUNTY OF SEDGWICK, SEDGWICK COUNTY SHERIFFS DEPARTMENT, SEDGWICK COUNTY SHERIFFS HINSHAW AND STEED, … DEPUTY MANUAL J. DIAZ, [and] … DEPUTY SHAQUISHA NELSON…." (Case No. 10-1042, Doc. 6 at ¶14). The sheriffs and Sedgwick County allegedly failed to instruct, supervise, control and discipline detention deputies on the duty to refrain from unlawfully harming mentally ill inmates. (¶55). Had they done so with reasonable diligence, plaintiff now claims, they could have known the acts done by Diaz would be committed and could have prevented them. (¶¶56-57). Sedgwick County allegedly "approved or ratified the unlawful, reckless, abusive and wanton conduct of Defendants STEED, HINSHAW, DIAZ and NELSON and the employees of the

11

Jail," and Steed, Hinshaw and Nelson allegedly ratified or approved the unlawful conduct of Diaz. (¶¶58-59). Sedgwick County allegedly knew of a de facto policy at the jail that when a mentally ill inmate was injured by a detention deputy, "the inmate would be charged with a crime in order to justify and cover up the excessive and unlawful use of force by the Jailer." (¶60).

Plaintiff's lawsuit claims Steed, Hinshaw and Nelson were aware that Diaz had an anger management issue and a reputation for using excessive force, but never required him to undergo psychological testing or counseling. Jailers allegedly harassed Richard by using racial epithets and comments about his mental condition. (¶¶144-148). Defendants allegedly did not require Richard to take his medication and, pursuant to a custom and practice of denial of care, did not report it to medical personnel when he did not take them. (¶¶153-156). Plaintiff claims all of the defendants were grossly negligent and engaged in willful and wanton misconduct by choosing not to remove or suspend Diaz when they had knowledge of his propensity for excessive force and by allowing him unsupervised access to Richard. (¶237). All of the defendants allegedly committed the torts of negligent infliction of emotional distress and outrage by breaching the foregoing specific duties owed to Richard. (¶¶241-249). The county and the sheriffs allegedly engaged in negligent supervision, hiring and retention when they had knowledge of Diaz's incompetency. (¶255).

Plaintiff is correct that nothing in §12-105b requires a claimant to spell out its legal theories. Nor does case law establish any duty to identify every possible tort claim in the notice. See Cannady v. Wichita Airport Authority, 1997 WL 86331, *12 (D. Kan., Feb. 21, 1997) ("notice of the occurrence and facts surrounding the occurrence sufficient to provide the defendant with the ability to investigate the claim and determine the level of damages is required, rather than notice of the particular theories of liability to be pursued"). But the statute requires "a factual basis of the claim" and "the circumstances of the act, omission or event complained of." This has led courts to find a lack of substantial compliance when the circumstances in the notice do not at least suggest a factual basis for claims that are advanced in a subsequent lawsuit.

In Semsroth v. City of Wichita, 2004 U.S. Dist. LEXIS 30727 (D. Kan., Oct. 25, 2004), the plaintiffs sent a 12-105b notice complaining of sex discrimination in the workplace. When a subsequent lawsuit added a number of state law tort claims, this court found the claims barred: "Since the city had no notice that plaintiffs claimed intentional infliction of emotional distress, negligent training, and failure to train, it could not properly investigate those claims." Semsroth, 2004 U.S. Dist. LEXIS 30727, *14. In Huffman v. City of Prairie Village, Kan., 980 F.Supp. 1192, 1207 (D. Kan. 1997), the court similarly found a notice complaining

13

of sexual harassment failed to advise the city of any potential claim for intentional infliction of emotional distress: "The letter written by plaintiff's counsel to the City Attorney makes no mention of this claim. The letter also makes no mention of seeking damages for emotional distress." In <u>Continental Coal, Inc. v. Cunningham</u>, 553 F.Supp.2d 1273, 1286 (D. Kan. 2008), the court found the defects in the plaintiff's notice included failure to state any factual basis for a claim of tortious interference with business relations. <u>See also</u> <u>Lines v. City of Ottawa, Kan</u>., 2003 WL 21402582, *10 (D. Kan., June 16, 2003) ("The notice of claim did not include a claim of wrongful termination in violation of public policy and therefore it did not afford the City the opportunity to investigate such a claim"); <u>Mitchell v. Coffey County Hosp</u>., 903 F.Supp. 1415 (D. Kan. 1995) (claim for retaliatory discharge barred where no facts to support such a claim were asserted in the notice); <u>Wiggins v. Housing Auth. Of Kansas City, Kan.</u>, 19 Kan.App.2d 610, 873 P.2d 1377 (1994) (claim for retaliatory discharge barred; nothing in plaintiff's notice contained any reference to whistle-blowing activity).

By contrast, in <u>Mitchell v. Unified Government</u>, 2000 WL 1920036, *5 (D. Kan., Dec. 21, 2000) the notice did not specifically use the terms "assault" and "battery," but it provided a factual description complaining about an officer's use of a "flash-bang" device and the injuries resulting from it. The court

14

found there was substantial compliance with the statute because the facts in the notice "could arguably support a claim for assault and battery."

Plaintiff's notice had no factual basis suggesting tortious conduct by anyone but Manuel Diaz. Although it adequately apprised the county of the injuries to Richard, it failed to alert the county to any possible claim that wrongful actions by the sheriff or other deputies caused the injuries or made the county directly responsible. It is difficult to see how the county could adequately "investigate and understand the merits of the claims advanced," Dodge City Implement, supra, when it was not alerted to any claim of county wrongdoing. Nor could it properly assess its liability or remedy defects that were nowhere disclosed in or even suggested by the notice. Cf. Tucking v. Board of Comm'rs. of Jefferson County, 14 Kan.App.2d 442, 448, 796 P.2d 1055 (1990) (citing Holmes v. Kansas City, 101 Kan. 785, 786, 168 P. 1110 (1917) ("The notice effected the purpose of the statute, which is to inform the city of the accident and of the defect which causes an injury, and to give the city an opportunity to ascertain the character and extent of the injury sustained.")).

Plaintiff argues claims such as negligent hiring and failure to train were implied by the facts in the notice. (Doc. 317 at 21). But he cites no facts which reasonably suggest or imply such claims. The mere allegation that an officer used excessive force on

one occasion does not reasonably suggest a claim of negligent hiring, training or supervision of the officer, or that other officers engaged in willful or wanton conduct which caused the injury.

Plaintiff also argues the county was not prejudiced in any way by a lack of notice because it was able to gather all the necessary facts from its investigation. But even if the county was able to quickly ascertain the circumstances of this injury, the objectives of §12-105b were undermined by a lack of notice that plaintiff was complaining about tortious actions and omissions of the sheriff's department itself, rather than merely the tortious actions of Diaz. The claims in this action seek to expand the basis of county responsibility beyond any fair reading of the notice. The county could not properly investigate, evaluate, or settle claims of which it had no potential notice. Like Dodge City Implement, the limited facts in the notice "posed serious obstacles to the County's … full investigation and understanding of the merits of the claims [now] advanced." The notice gave Sedgwick County no objective reason to investigate or assess its KTCA liability exposure from its hiring practices, training program, or policies for treatment of mentally ill inmates. The legislative purpose of facilitating the "early and easy resolution" of claims is thwarted when the picture of

liability in a pre-suit notice differs so materially from the actual claims made in a subsequent lawsuit.[4]

**Conclusion**.

The motion for partial summary judgment of defendants Board of County Commissioners of Sedgwick County, County of Sedgwick, Sedgwick County's Sheriff's Department, Sedgwick County Sheriff Robert Hinshaw, Sedgwick County Sheriff Gary Steed, and Sedgwick County Detention Deputy Saquisha Nelson (Doc. 290) is **GRANTED**. The Kansas tort claims against these defendants for gross negligence and willful and wanton misconduct (Count I), negligent infliction of emotional distress (Count III), outrage (Count IV), negligent supervision, hiring, and retention (Count V) are hereby dismissed without prejudice for failure to satisfy the notice requirements of K.S.A. §12-105b(d).

IT IS SO ORDERED.

Dated this  5th   day of October, 2012 at Wichita, Kansas.

s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

---

[4] The parties' briefs do not discuss the practical effect of these claims on the county's liability exposure. But if the additional tort claims increase the likelihood or the extent of the county's KTCA exposure – i.e., beyond what it would be under respondeat superior alone –– then the objectives of §12-105b would clearly be undermined by allowing the claims, because the county's risk would be expanded without the prior notice contemplated by the statute.