# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RONELL RICHARD, )
)
          Plaintiff, ) **CIVIL ACTION**
)
v. ) No. 09-1278-MLB
)
ROBERT HINSHAW, et al., )
)
          Defendants. )
)

## MEMORANDUM AND ORDER

Before the court are the following:

1. Defendants' <u>Daubert</u> motion (Doc. 423);

2. Plaintiff's response (Doc. 456); and

3. Defendants' reply (Doc. 459).

A hearing was held on December 4, 2013. Plaintiff's experts who are the subject of the motion appeared and were extensively questioned.

### Background

On February 15, 2008, plaintiff's decedent, Edgar Richard, was severely beaten in his cell at the Sedgwick County Jail by Manual Diaz, Jr., a jailer. Richard had been an inmate for 3½ months and had frequently conducted himself in various bizarre ways. Prior to his incarceration, Richard had a history of mental problems. Richard died February 1, 2010.

Plaintiff brought 42 U.S.C. § 1983 and pendent state law claims against the individuals and entities who he believes are responsible for Richard's alleged lack of proper care and treatment while in custody. The parties are familiar with the claims and defenses which

are set out in the pretrial order, Doc. 422.  Discovery has been extensive, to put it charitably, and voluminous dispositive motions are pending.

The witnesses who are subject of the Daubert motion are Stuart Grassian, Kathryn Burns and Ken Katsaris.  Grassian and Burns are psychiatrists; Katsaris has experience in law enforcement and jails. Each witness prepared reports based on their review of discovery materials.  In addition, Grassian and Burns were deposed at length. Katsaris, for some reason, was not.

### Applicable Standards

Defendants do not directly challenge any of the witnesses' qualifications and, to their counsels' credit, make only limited challenges to the opinions of Grassian and Burns.  They direct most of their fire at Katsaris.  Indeed, defendants want all of Katsaris' opinions excluded.

"Rule 702 sets forth the standard for admission of expert testimony," U.S. v. Fredette, 315 F.3d 1235, 1239 (10th Cir. 2003), and assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Exclusion of expert testimony is the exception, not the rule.  See Advisory Committee Notes concerning the amendment to Rule 702 (noting that "a review of the case law after Daubert shows that the rejection of expert testimony is the exception rather than the rule.")

If an expert is sufficiently qualified, as in this case, then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology."  United States

v. Avitiz-Guillen, 680 F.3d 1253, 1256 (10th Cir. 2012).

### Grassian and Burns

Defendants request that Grassian and Burns be prohibited from testifying whether "Ad Seg" confinement had an impact on Richard and the nature and extent of such impact. (Docs. 424 at 13 and 459 at 1).[1] The court does not understand the basis for this proposed restriction. Grassian and Barnes are psychiatrists. Both have experience with jail environments, including segregation. Both reviewed medical and other records pertaining to Richard's confinement. Their methodology (to the extent it was inquired into) is straightforward: they used their essentially unchallenged training and experience to evaluate the facts taken from documents and deposition testimony. Surely this is the same methodology that a similar defense expert would use. Defense counsel has suggested no different methodology.

Grassian's and Burns' opinions must be reliable to meet the requirements of Rule 703. To be reliable, the opinions must be within the witness' area of expertise, be based on facts and data reasonably relied on by experts in the field (Rule 104(a)) and not be speculative or mere guesswork. The only possible area of unreliability suggested by defendants is the witnesses' failure to review all the records or contrary records. But there is no requirement in the rules of evidence or in the Daubert line of cases that an expert's opinion must be based on every conceivable scrap of information or upon only

---

[1] Defendant Sedgwick County's earlier motion to strike Grassian's testimony and plaintiff's response (Docs. 343 and 350) have been considered, as well.

-3-

undisputed facts.² Defense counsel has not demonstrated that the thousands of pages of documents the experts did review are not of the type reasonably relied upon by psychiatrists who possess jail experience.

At the hearing, there was colloquy between defense counsel and the court with respect to whether Grassian's opinions, in particular, amounted to impermissible "weighing of disputed facts" which made the opinions "unreliable." The court did not understand, and still does not understand, counsel's argument. The court will not permit any witness, expert or otherwise, to opine, directly or indirectly, on the credibility of witnesses but that does not mean that the expert cannot base his or her opinion on some facts while discounting or rejecting others. Neither Daubert, nor the rules of evidence have eliminated the importance of cross-examination as the principal method of testing the opinions of an expert witness.

Finally, there is no question that Grassian's and Burns' testimony and opinions will be helpful to the jury. It is highly doubtful that any juror will have much, if any, knowledge of a jail environment and the effects of solitary confinement on an inmate with

---

²At the hearing, defense counsel produced a stack of documents at least as thick as a New York City yellow pages directory which presumably are the documents which the witnesses did not consider. The court has no idea what is contained in those documents. It would require several days for anyone to read and digest the documents. No explanation was given as to why the documents were not covered with Grassian and Burns at their depositions, especially if the documents would significantly affect their opinions. The court is concerned about use of these documents at trial. If defense counsel intend to use any or all of the documents to cross-examine Grassian and Burns, considerable delay will occur because they have not read them. The court will discuss this situation with counsel at a status conference prior to trial.

mental issues.  While it is undoubtedly true that the behavior exhibited by Richard would suggest, even to a lay person, that he had mental problems, that is not the only issue the jury will have to consider which comes within the scope of Grassian's and Burns' expertise.[3]

## Katsaris

Defendants have cited cases which restricted Katsaris' opinions. White v. Gerardot, 2008 U.S. Dist. LEXIS 72436 (N.D. Ind. 2008) involved an officer shooting.  Katsaris developed several opinions which, taken together, concluded that the officer's conduct was "objectively unreasonable"; in other words, that he should not have shot the individual.  As in this case, Katsaris' qualifications were not seriously disputed.  After a Daubert analysis, the court permitted Katsaris to opine on police procedures and use of force under the circumstances of the shooting.  However, Katsaris was not allowed to opine that the officers' conduct was "objectively unreasonable" because that was an issue for the jury.  The court also disallowed Katsaris' opinions on the post-shooting investigation.

Defendants' other case is McCloughan v. City of Springfield, 208 F.R.D. 236 (C.D. Ill. 2002).  It is cited in Gerardot.  Katsaris was offered as an expert regarding the appropriate standard of conduct of off-duty police officers and the use of force.  Applying Daubert and

---

[3] Plaintiff cites Grassian's opinion that the jail needs to establish a mental health housing unit. (Doc. 456 at 6).  Grassian and the other experts must confine their opinions to the events which form the basis of this case.  Their opinions on collateral matters such as establishment of separate units for mentally ill inmates, in the past or in the future, are not relevant to any of the issues and will not be allowed.

Rule 702, the court allowed Katsaris to testify about proper police procedures but refused to allow opinions regarding critical disputed factual issues:

> McCloughan is correct that expert testimony on police practices and the use of force is, generally, admissible in a § 1983 excessive force case. E.g., Kladis v. Brezek, 823 F.2d 1014, 1019 (7th Cir. 1987); Calusinski v. Kruger, 24 F.3d 931, 937 (7th Cir. 1994). The Court believes that Katsaris' testimony in this area would be helpful to the jury. Specifically, the Court will allow Katsaris to offer testimony regarding the proper procedures to be used by law enforcement officials when restraining arrestees who resist arrest, how and when an officer should decide to go from off-duty to an on-duty officer, and the propriety of the Springfield Police Department's Rules of Conduct (specifically Rule 10). Basically, the Court believes that Katsaris can provide a general framework regarding proper police conduct which the jury can utilize to determine the specific facts of this case.
>
> However, the Court will not allow Katsaris to offer any specific opinions regarding the specific facts of this case. As the Court understands it, most of the crucial facts are in dispute. In fact, it is the Court's understanding that at least part of Patterson's defense is going to be that he did not kick McCloughan in the head. As such, the Court believes that, if it were to allow Katsaris to offer his opinion in this case as to whether Patterson or Tavernor followed proper police procedures, the Court, in essence, would be allowing Katsaris to, as an expert, make and relay credibility findings to the jury regarding the witnesses' testimony. Such testimony is improper and is not helpful to the jury. See Pena v. Leombruni, 200 F.3d 1031, 1034 (7th Cir. 1999) (holding that "[t]he intended focus of [the expert's] testimony was not, however, as the judge believed, [the plaintiff's] mental state. It was whether [the defendant] had acted reasonably given the nature of the threat that [the plaintiff] posed (that is, menacing the officer with a chunk of concrete). But expert evidence is admissible only when it will 'assist' the trier of fact, and the jury needed no help in deciding whether [the defendant] was acting reasonably. [The defendant's] behavior was unambiguously dangerous; the question whether the danger was sufficiently lethal and imminent to justify the use of deadly force was within lay competence.") (internal citations omitted); see also United States v. Romero, 57 F.3d 565, 571 (7th Cir. 1995), citing with approval United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992) (holding that "[w]e hold only that the operations in question must have esoteric aspects reasonably perceived as

beyond the ken of the jury and that expert testimony cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events."); see also United States v. Lundy, 809 F.2d 392, 395 (7th Cir. 1987) (holding that "'expert' testimony based solely on hearsay and third-party observations that are adequately comprehensible to lay people would be improper to admit under Rule 702.").

These cases are helpful, but not dispositive, because the issues in this case are broader than police officer conduct in a street-level situation. But the Tenth Circuit has long recognized that experts may offer opinions whether an officer's conduct fell below accepted standards in the field of law enforcement, including prison administration, Zuchel v. City and County of Denver, Colo., 997 F.2d 730, 742 (10th Cir. 1993) (case citations omitted). Defendants have not cited any case to support their argument that Katsaris' opinions should be rejected in their entirety. His opinions are as follows:

1. The jail staff's treatment of Richard did not meet the jail's own published standards as well as those of several national organizations;

2. The jail failed to monitor Diaz as recommended in an evaluation;

3. Diaz's use of force was inconsistent with his training as was that of jailer Nelson who became involved in the altercation;

4. Diaz's fitness for duty was compromised and posed a significant risk of harm to Richard and other inmates. The Board of County Commissioners, the Sedgwick County Sheriff and others responsible for the jail ignored the problems associated with Diaz. It is "inconceivable" that the sheriff defendants were not aware of Diaz's behavior;

-7-

5.   Jailer Nelson's conduct was excessive and unreasonable and violated "all" training and procedures for inmate control.

        6.   Training of jail personnel, both by those responsible at the jail <u>and</u> by ConMed, regarding treatment of "mentally ill and mentally disabled inmates" was deficient as recognized by national organizations.

        7.   The conditions of Richard's confinement in "Ad Seg" were contrary to accepted standards;

        8.and 9.   There was a prevailing "culture" of bias against inmates in general and mentally impaired inmates in particular which was present throughout the jail "chain of command";

        10.   The jail's "Internal Affairs Investigation was geared to cover up and excuse the conduct of Diaz and Nelson." Repeated interviews of Nelson demonstrated an attempt to get her to use words which would assist Diaz and the investigation's "results" were "reversed" by Diaz's guilty plea.

        Opinions 4, 8, 9 and 10 will not be allowed at trial. They are not reliable because they opine on what was, or was not, known by others and therefore amount to speculation. In addition, the court has not determined whether evidence regarding post-assault investigations and Diaz's conviction will be admitted. To the extent evidence is admitted, Katsaris will not be permitted to opine on any aspect of the investigation or the court case involving Diaz.

        On the other hand, Katsaris is qualified to tell the jurors about accepted standards which pertain to jails in terms of training of jailers, force applied to inmates, use of "Ad Seg" confinement and handling of mentally impaired inmates. He can opine whether policies

and procedures at the Sedgwick County Jail comply with applicable national standards.  The jury will be helped by knowing that there are certain national standards which pertain to running of jails to the extent they apply to the issues in this case, as well as whether the standards were followed.  Such opinions do not convert the lawsuit into some sort of negligence case.  But, in general, Katsaris' opinions numbers 1, 2, 6 and 7 will be allowed if properly expressed (see additional rules, infra).  Opinions 3 and 5 will be allowed but will be limited to an objective comparison between the conduct and the procedures and training.

## Additional Rules Regarding Expert Testimony

This court's rule is, and always has been, that an expert's trial testimony is limited to matters covered in a report and, where applicable, at a deposition.[4]  (Of course, the expert's qualifications may be inquired into when that is an issue.)  This rule is intended to prevent "sandbagging" and claims of surprise which inevitably cause problems and delays during trial.  Based on what occurred at the hearing, the court is satisfied that counsel and the witnesses understand this rule and the experts' opinions, however expressed, are now final.  (The court directed Katsaris to provide more definitive citations to certain standards mentioned in his report.  This was done

---

[4]Plaintiff cites Thompson v. Doane Pet Care Co., 470 F.3d 1201, 1203 (6th Cir. 2006) for the proposition that ". . . an expert's testimony that expands upon an opinion expressed in a previous report or deposition is admissible."  In Thompson, the district court ruled that the expert must read his report to the jury ". . . and not one word more."  The Sixth Circuit quite rightly disagreed with such a restrictive rule.  The experts in this case are not so limited.  This court is required to respect the ruling in Thompson but not follow it. In any event, the court doubts that the Sixth Circuit would apply Thompson to the aforesaid rules.

for the benefit of defense counsel and will not amount to a prohibited supplement to his report.)

Another procedural rule concerns materials relied upon by the expert. Too many times, a trial has been delayed when, on cross-examination, a witness is asked to cite the source of discrete facts or data on which the expert relied. If the witness is not properly prepared, it usually becomes necessary to take a recess while the witness searches his or her file. This presents a potentially very serious problem in this case because of the mind-numbing amount of materials reviewed by the witnesses. The court is satisfied that counsel and the witnesses understand the court's concern and, to the extent possible, will be able to avoid the problems at trial.

It goes without saying that an expert must confine his or her opinions to areas of the witness' expertise and not be asked to offer opinions on areas in which the witness is unqualified or otherwise precluded, such as opinions which purport to state applicable legal standards or which are couched in legal terminology. Both Grassian and Katsaris candidly acknowledged that they are not qualified to offer opinions on certain subjects inquired into by defense counsel. The court is confident that plaintiff's counsel will not embarrass his witnesses by asking for opinions which the witness declines to offer due to lack of expertise.

In his report, Grassian uses words like "unconscionable disregard," "shocking dismissal," "complete abdication," "utterly inexcusable," "deeply corrupt," "sadistic" and similar pejoratives to characterize, illustrate and emphasize his opinions. He and the other witnesses will not be permitted to use such words at trial because

they will not help the jury and will prompt objections which will waste time. To the extent they are appropriate, such pejoratives are reserved for counsel's arguments.

Finally, the expert's role is to help jurors understand subjects with which the jurors are not familiar. This role is professionally neutral. In other words, the expert is not an advocate for the party who hires him or her. Advocacy of a position is reserved to counsel. Should it become necessary, the court will not hesitate to remind an expert of his or her proper role, in front of the jury, if the expert makes that necessary.

These rules and admonitions apply equally to defense experts.

In summary, defendants' Daubert motion is denied with respect to Grassian and Burns. It is granted, in part, and denied, in part, with respect to Katsaris.

IT IS SO ORDERED.

Dated this  16th   day of December 2013, at Wichita, Kansas.

                                            s/Monti Belot
                                            Monti L. Belot
                                            UNITED STATES DISTRICT JUDGE